FILED

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**EASTERN DIVISION**

98 JAN -7  AM 10: 00

U.S. DISTRICT COURT
N.D. OF ALABAMA

DR. LOUISE J. CLARK,          )
                              )
    **Plaintiff,**            )
                              )
    **vs.**                   )          CV 97-PT-1135-E
                              )
**JACKSONVILLE STATE**        )
**UNIVERSITY and THE BOARD OF** )
**TRUSTEES OF JACKSONVILLE**  )
**STATE UNIVERSITY,**         )          **ENTERED**
                              )
    **Defendants.**           )          **JAN   7 1998**

### MEMORANDUM OPINION

This cause comes on to be heard on defendants' Motion For
Summary Judgment filed on October 30, 1997.[1]

### Plaintiff's Contentions

A summary of plaintiff's position, as set out in the
pretrial order, is the following:

Plaintiff is a full professor and Associate Dean in the
defendants' College of Commerce and Business Administration
(College).  She has been employed by the defendants since 1969
and obtained a Ph.D. in Business Statistics in 1984.  Plaintiff
claims, under various federal statutes and the Constitution,
gender discrimination and/or retaliation for engaging in
protected conduct.  The more specific non-time barred acts she
complains of are:

---

[1]Plaintiff claims that the defendants' presentation(s)in
support of their motion should not be considered because they
were not presented in proper form. The court will not thus exalt
form over substance.

In September 1995, plaintiff applied for the position of
permanent Dean of the College.  On April 30, 1996, the position
was awarded to Dr. William T. Fielding, a male.  Plaintiff claims
that she was better qualified than Fielding for the position.
Plaintiff also claims that she was discriminated against in the
spring of 1995 when Fielding was named as Acting Dean.  The EEOC
charge was not filed until May 15, 1996.  It is clear that the
Title VII claim based upon this event is time barred.  Unless
Title VII preempts other purported claims based upon other
statutes, etc., this claim may not be totally time barred.  Since
the court concludes that there is no genuine issue of
discrimination, it is not necessary for the court to reach this
issue.  Plaintiff also claims that her responsibilities as
Associate Dean were thereafter curtailed after Fielding was named
permanent Dean.

<u>Defendants' Contentions</u>

Defendants contend that the plaintiff was one of over
twenty-six applicants for the position.  She was the only female
applicant.  An impartial search committee screened the various
candidates.  The committee first determined who met the minimum
requirements as nationally advertised.  The committee members
evaluated, scored and ranked the candidates who had the minimum
qualifications.  Following an open discussion, the list was
narrowed to ten candidates. Plaintiff was the last included in
the final ten.

After a review of references and other investigation by the

2

committee members, individually and collectively, the committee members anonymously ranked the remaining candidates from one to five. After the rankings were added, plaintiff did not rank in the top six. There was a tie for fifth place (not including plaintiff) and the committee decided to invite four candidates for an on-campus visit. The defendants elected to interview three of the four. After the search committee considered faculty evaluations of the final three candidates, the committee recommended two persons to defendants' Administration. Fielding was selected.

The search committee included two persons recommended by plaintiff. There were initially seven males and four females on the search committee. One female retired during the search and was replaced by a male Dean of another college.

Plaintiff was not named because she was not selected through an exhaustive non-biased process which determined that Fielding was the best qualified candidate. Fielding was almost the unanimous choice of the faculty members, male and female, for the Acting Dean position. There was no discrimination and no retaliation.

<u>Facts</u>

<u>Defendants' Articulated Reasons</u>

Defendants have filed the affidavits of various members of the search committee. These affidavits verify the above stated contentions of the defendants as to how the search committee performed its function. Professor Cynthia McCarty (female)

3

chaired a sub-committee to develop screening tools.  She did not vote for plaintiff as one of the top four candidates.  She further testified that, in her opinion, plaintiff's gender had nothing to do with her not being selected as a finalist.

David Watts, Vice President of Academic Affairs, appointed the members of the search committee.  He testified that among the members appointed were Glenn Huie and Wilbur Berry, recommended by plaintiff.  He also testified that, prior to the search process, plaintiff threatened legal action if she was not named as Dean of the College.  He further testified that former College Dean Patrick O'Brien was negative about the consideration of plaintiff as Dean.  Watts further testified:

> He advised me that Louise Clark had not earned the confidence of the faculty in the CCBA.  He told me that he felt a faculty revolt would occur if Louise Clark was appointed as Acting Dean.  He shared with me the results of certain student evaluations which were not favorable to Louise Clark.  He advised me that as a result of Dr. Clark's administration of the MBA program, enrollment had dropped substantially.  He told me that he had planned to re-evaluate Dr. Clark's responsibilities, including possibly removing her as Director of the MBA.  I did not discuss Dean O'Brien's comments with any members of the CCBA search committee. Dean O'Brien recommended Dr. Fielding as Acting Dean.
>
> Prior to the new Dean being selected, I recommended to President Harold McGee the appointment of William Fielding as Acting Dean of the CCBA.  Prior to recommending William Fielding as Acting Dean, I sought voluntary input from the faculty of the CCBA. Attached hereto as Group Exhibit "B" are twenty-four (24) letters or written references from CCBA faculty members on the appointment of an Acting Dean.  Twenty-three (23) of the letters/references recommend William Fielding as Acting Dean.  One letter recommends both William Fielding and the Plaintiff for the Acting Dean

position.

. . .

The two(2) Deans who have been employed by Jacksonville
State University for the most recent two (2) openings
for deans at Jacksonville State University are female.
These positions are:

    A.   Dean of the College of Education and
Professional Studies; and
    B.   Dean of the College of Nursing and Health
Sciences.

    For the Dean of the College of Education and
Professional Studies, two (2) searches were conducted.
In the first search, there were a total of thirty-three
candidates.  Seven (7) were female.  In the second
search, there were (16) candidates.  Four (4) were
female.  There was one (1) male applicant for the
position of Dean of the College of Nursing and Health
Sciences.

Glenn Huie, who was recommended by plaintiff as a search

committee member, testified, <u>inter alia</u>, that:

    Prior to being asked to serve on the committee, I had
come to know Dr. Louise Clark.  I considered her a
friend (and still do).  I had worked with her during
various business and civic activities.

. . .

    After debate, discussion and consideration, the
candidate list was narrowed to ten.  Dr. Clark was one
of the final ten (10).

    The committee members were each assigned one of
the remaining candidates for reference checks and
detailed review.  I was assigned Dr. Clark.  I
interviewed thirteen (13) individuals regarding Dr.
Clark.  I talked with each person who submitted a
letter of reference for Dr. Clark.  A list of the
individuals I interviewed is attached hereto as Exhibit
"A."  I prepared notes during the interviews and
compiled a collection of the comments to provide to the
other committee members.  A copy of the collection I
provided to the other committee members is attached as
Exhibit "B."  At a committee meeting, the information
was discussed.

5

. . .

> In my opinion, Dr. Clark's gender (female) had
> nothing to do with her not being selected as a finalist
> for the position of Dean of the College of Commerce and
> Business.  I did not vote for Dr. Clark as a finalist
> because of, among other things, the numerous negative
> comments obtained during the screening process from the
> CCBA faculty (both female and male) who did not support
> her candidacy.[2]

Robbie Medders (female), a Business Consultant in the

defendants' Small Business Development Center testified that she

was a member of the search committee.  She testified, inter alia,

that:

> After the points were totaled (and verified for
> accuracy by another member), it was determined that
> there was a tie for fifth place.  After discussion, the
> committee voted to recommend that only the top four
> candidates be invited for an on-campus visit.  I did
> not vote for Dr. Clark as one of the top four
> candidates.

. . .

> In my opinion, Dr. Clark's gender (female) had
> nothing to do with her not being selected as a finalist
> for the position of Dean of the College of Commerce and
> Business.

Group Exhibit B attached to defendants' motion includes letters

of recommendation to Dr. David Watts from persons suggesting who

should serve as Acting Dean.

For plaintiff:

---

[2]See Exhibit B to Huie's affidavits for alleged strengths,
weaknesses and management style of plaintiff discovered during
his interviews of persons listed on Exhibit A to his affidavit.
Interestingly, on October 23, 1990, Huie had written a letter of
recommendation to the Chair of a search committee which was
considering Clark for the position of Dean of the College at that
time.  See Exhibit 12 to defendants' motion.  This was before he
formally investigated as he did in 1995-96.

W. G. Berry.[3]

    Total of one.


<u>For Fielding</u>:

Lynn Brown

Patricia Borstoff

Dr. W. Mark Hearn

Dr. Angela H. Bell

Dr. Bill Scroggins

Dr. Sharon Seay

Elise M. Gantt

Donald G. Paxton

Michael B. Marker

Willard Butterworth

Frank C. Fuller

Mike McCormack

George Trivoli

Doris Bennett

Dr. Paul Thompson

Dr. Clifford Cygrest

Dr. James Golden

P. W. Shadd

Richard Cobb

Dr. Edward Sullivan

---

[3]Placed on the search committee on recommendation of plaintiff.

Dr. W. F. Koehler

    Total of twenty-one.[4]


Floyd Kirby wrote a letter to Watts stating that "Fielding is the more people oriented candidate who may be better able to increase credit hours. Dr. Clark is more familiar with the AASCB accreditation process." Kirby recognized that his was likely a "non-position." Most, if not all, of the persons listed above are College faculty members or are otherwise related in some fashion with the College. The letters were written when Watts was considering the appointment of an Acting Dean of the College during April of 1995 and had, on or about April 7, 1995 asked for input on faculty preferences.

Plaintiff's Response

In response to defendants' strongly articulated reasons for the appointment of Fielding, plaintiff offers the following evidence.

Plaintiff recounts numerous experiences that she has had which would create a reasonable inference that she was qualified for the position of Dean of the College. (See Exhibit 3 of plaintiff's submission in opposition to Defendants' Motion For Summary Judgment.)[5]

---

[4]Defendant has argued twenty-three out of twenty-four. The court may have overlooked one or two letters.

[5]See also Plaintiff's [Brief in] Opposition to Defendants' Motion For Summary Judgment.

8

Plaintiff applied for the positions of acting and permanent Dean of the College. Vice President Watts acknowledged that plaintiff appeared to be qualified, but named Fielding as Acting Dean.[6]  Plaintiff told him that the decision was a "slap in the face."  She immediately told leaving Dean O'Brien that she was going to sue. Plaintiff further complains of various matters related to her job assignments after Fielding became Acting Dean. (See said Exhibit 3).

Plaintiff offers what purports to be the "expert" opinion of Dr. Mary Guy. (See Px. 4). The "opinion" is, in effect, an analysis of the evidence such as would be made by a fact finder coupled with the general observation that "despite equal or superior qualifications, women are often passed over for promotion in favor of men" and that "the Dean of the College of Business at Jacksonville State University is out of reach for women simply because they are not men." [7]

Plaintiff makes a blanket allegation that "After Appointing William Fielding To The Acting Dean position, Defendants Hand-Picked Search Committee Members And Directed Their Activities In

---

[6]Plaintiff emphasizes that Vice President Watts stated to her early on that she was an appropriate candidate.  This statement was likely an attempt to "avoid an awkward situation." See Mize v. Jefferson Co. Bd. Of Educ., 93 F.3d 739, 744 (11th Cir. 1996). The suggestion that Watts' alleged earlier statement creates an inference of later discrimination is "implausible." Id. at 743.

[7]The court, after reading and re-reading Dr. Guy's affidavit, concludes that it is entitled to little, if any, weight as an "expert opinion." It is simply conclusory argument. It purports to be a substitute for the facts of this case.

9

Order To Ensure Fielding's Selection To The Dean Position."

(Plaintiff's brief at p.9.)   The only arguable evidence which

plaintiff suggests to support this allegation is the following:

> 70.  Vice-President Watts decided the composition of
> the search committee.  (Watts Depo. At 81-82, 94, Ex.
> 4.)
>
> 71.  President McGee knew and approved of the
> composition of the search committee, and Watts
> discussed the search committee membership with McGee on
> this occasion.  (McGee Depo. At 53; Watts Depo. At 83,
> 90-91.)

                          .  .  .

> 78.  Vice-President Watts selected Dean Roberta Watts
> to chair the search committee.  (Watts Depo. At 95.)
>
> 79.  When Vice-President Watts appointed Dean Watts to
> chair the search committee in Spring, 1995, he had
> already been notified verbally that she would be
> retiring.  (Watts Depo. At 96.)
>
> 80.  Although plaintiff had suggested that Carol Smith,
> Student Support Services Coordinator of the College,
> serve on the search committee, and although Vice-
> President Watts professed to have departments
> represented on the search committees, Smith was not
> selected for the search committee.  (Watts Depo. At 871
> Exs. 3 & 4.)
>
> 81.  Watts then sought recommendations regarding
> additional female to serve on the committee; Sharon
> Seay, an assistant professor within the Accounting
> Department of the College and thereby under the
> supervision of Acting Dean Fielding, was selected to
> serve.  (Watts Depo. At 103-04, Ex. 4.)
>
> 82.  Search committee members Richard Cobb, Robbie
> Medders, Cynthia McCarty and Bill Koehler, were either
> assistant professors or account executives in the
> College, and thereby under the supervision of Acting
> Dean Fielding.  (Watts Depo. At 104-09, Ex. 4.)

                          .  .  .

> 84.  Search committee member John Milewicz is a
> professor within the Management and Marketing

Department of the College, and thereby under the
supervision of Acting Dean Fielding.  (Watts Depo. At
102-03.)

85.  Search committee member Bill Scroggins is a
professor within Fielding's own department, Economics
and Finance Department, and under the supervision of
Fielding as Acting Dean.  (Watts Depo. At 103.)


Plaintiff apparently also complains of the appointment of

Berry (who nominated her for Acting Dean) and Huie whom she gave

as a reference and who had previously recommended her.[8]

Plaintiff offers no evidence that either Vice-President Watts,

President McGee or Fielding attempted to influence the search

committee members.  Somehow, plaintiff suggests as evidence of

discrimination that:

94. Vice-President Watts was provided the screening
tools used by the search committee, and he did not
object to their use.  (Watts Depo. At 227-28, Ex. 24.)[9]

Plaintiff alleges a number of alleged inaccuracies in Fielding's

application; none of which are shown to have been known to any

decision makers before or at the time of his appointment or that

they were discriminatorily ignored.

----

[8]See Nos. 87 and 88, page 11, plaintiff's brief.

[9]Much of plaintiff's "evidence" is simply a recitation of
how the selection process was conducted.  Little, if any,
improper methods are suggested; certainly nothing based on
gender.  Plaintiff further recounts a long list of testimony of
Watts, McGee, etc., none of which creates any reasonable
inference of discrimination or retaliation, individually or
collectively.  Apparently plaintiff subjectively feels that a
search committee should have been selected which would have
selected her.  The evidence suggests that this would have been
difficult to do.

Plaintiff submits evidence which she argues, in various ways, supports an inference that she was better qualified than Fielding. The court has fully considered all the listings in "Plaintiff's Opposition, [Brief] to Defendants' Motion For Summary Judgment." Those allegations and arguments will be made part of the record.

<u>Court Analysis</u>

The circumstance which led to the 1995 and 1996 subject appointments began when the former Dean of the College left the position. The next significant step came when Vice President Watts requested faculty input as to whom should be named as Acting Dean. The faculty, male and female, overwhelmingly recommended Fielding. Only one male, who at some point, was listed as a reference by plaintiff, nominated plaintiff. Not a single female recommended plaintiff.

Thereafter, in the usual fashion, a search committee undertook to screen and recommend the person(s) to be selected. Plaintiff was tenth on the list. The top four were further considered. There is no reasonable inference that any member of the search committee acted in bad faith or considered gender in any way. One of the members, Huie (a male), had, based on friendship, earlier recommended plaintiff for the position in 1990. After he was placed on the subject search committee, at plaintiff's request, and personally interviewed knowledgeable persons, he determined not to vote for plaintiff. The numerous negative comments affected his decision. At least two of the

12

female members did not vote for plaintiff.  Plaintiff had
received negative evaluations from students.[10]

Plaintiff had pre-determined, prior to any search, etc.
that, if she did not receive the position, she would sue.  The
court concludes that no reasonable finder of fact could reach a
reasonable inference that plaintiff was discriminated against
because of her sex or that she was retaliated against.  There is
no reasonable inference that any member of the search committee,
Vice President Watts or Pres. McGhee acted in bad faith.  In
Clark v. Huntsville Bd. Of Ed., 717 F.2d. 525 (11th Cir. 1983),
this judge held that the plaintiff had been discriminated against
because of his race when the Board did not follow its policy of
giving preference to in-house employees in filling positions.
The Court of Appeals reversed because there was no substantial
evidence that any decision maker had acted in bad faith in his or
her perception that another party was better qualified, even
though the plaintiff there was at least qualified and was
entitled to preferential consideration.

The court is aware of the sometimes recognition that "[i]n
general, summary judgment is an inappropriate tool for resolving
claims of employment discrimination, which involve nebulous
questions of motivation and intent."  Grigsby v. Reynolds Metals

---

[10]See also affidavit of Sarah Bonds and attached exhibits in
Defendants' Initial Response to Plaintiff's Opposition To
Defendants' Motion For Summary Judgment.  Many of the negative
comments about plaintiff related to her interactions with others.
Cf. McCarthney v. Griffin Spalding County Bd. Of Ed., 791 F.2d
1549 (11th Cir. 1986) in all respects.

Co., 821 F.2d 590, 595 (11th Cir. 1987).[11] Nonetheless, "the establishment of a prima facie case does not in itself entitle an employment discrimination plaintiff to survive a motion for summary judgment in all cases." Id., 821 F.2d at 595. Grigsby goes on to say that

> We also recognize, however, that the inference of intentional discrimination raised by a plaintiff's prima facie case may be stronger or weaker, depending upon the facts of a particular case. . . . "To a large extent, of course, the strength or weakness of the inference of discrimination created by the employee's prima facie case defines the nature of the employer's rebuttal" . . . . In some cases the defendant's evidence of legitimate, non-discriminatory reason for its actions may be so strong as to rebut completely the inference raised by plaintiff's prima facie case. Such is the case here. Of course, even in the face of such strong justification evidence, a plaintiff might still create an issue of fact and avoid summary judgment by introducing additional evidence of pretext. But a plaintiff may not in all cases merely rest on the laurels of her prima facie case in the face of powerful justification evidence offered by the defendant. Without more, the evidence constituting Grigsby's prima facie case is not sufficient to create an issue of fact in light of the compelling evidence of lawful motive presented by Reynolds.

Id. at 595-97.

> [O]nce the plaintiff proves a prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its employment decision. Finally, if the defendant carries its burden, the plaintiff must then prove by a preponderance of the evidence that the legitimate reasons offered by defendant were merely a pretext for discrimination.

Id. at 594.

---

[11]See, however, Early v. Champion Int'l Corp., 907 F.2d 1077 (11th Cir. 1990) and numerous other Eleventh Circuit cases which have either affirmed summary judgments or reversed trial judges for not granting judgments as a matter of law in such cases.

14

Based on the foregoing, the court judges its task is to determine the following:

(1)   Has plaintiff offered evidence of a prima facie case?

(2)   If she has, how strong is it?

(3)   Have defendants offered rebuttal evidence?

(4)   If so, how strong is it?  Is it strong enough to overcome a weaker prima facie case?

(5)   If defendants' rebuttal is strong enough to overcome a weaker prima facie case, has plaintiff offered sufficient evidence of pretext to create an issue of fact?

This court concludes that any possible inference of discrimination raised by plaintiff has been strongly rebutted by defendants' reasons for not promoting plaintiff. If plaintiff has proved a prima facie case, it is, at best, weak.

Plaintiff urges that these reasons were mere pretext.  She contends that her sex was impermissibly considered in the decisions.  In Grigsby, supra, the court said, inter alia,

> Grigsby also asserts that the district court erred in
> completely accepting Reynolds justification that it did
> not select her for the District Traffic Manager
> position because it found someone else who was
> objectively more qualified.  Her entire evidence on
> this point consisted of her affidavit and several
> accompanying exhibits.  Grigsby showed that her salary
> performance appraisal for the period preceding her
> application exceeded that of Regan Ragland, the
> candidate who was eventually chosen for the position.
> Grigsby also asserted that the supposedly objective
> standards for the position were created after Ragland
> was selected for the job.  Further, Grigsby stated in
> her affidavit that she was told by Jim Ogborne,
> Reynolds' Customer Service Manager, that "the
> characters the Traffic Manager would have to deal with
> were pretty rough and he did not want me to have to

15

deal with this type of thing." Grigsby Aff. at 2.
However, in light of Reynolds' extensive evidence of
the relative qualifications of the applicants,
Grigsby's testimony and exhibits simply fail to raise
any inference of pretext or discriminatory intent.

It is undisputed that Ragland had far greater
experience with Reynolds' cost accounting system,
capitalization projects, auditing procedures, and
computer systems than did Grigsby.  Ragland also had
eight years experience in various departments of the
Alloys plant, including four years experience
supervising professional engineers, as opposed to
Grigsby whose experience was largely limited to the
smaller WRB plant.  Moreover, the fact that Grigsby
received superior performance ratings in her WRB
position does not refute the fact that Ragland was
better qualified for the more sophisticated job
Reynolds sought to fill in the Alloys plant.

Id. at 596.

This is not a situation where, as Grigsby contends, the
district court impermissibly weighed the parties'
evidence instead of merely looking for the existence of
a genuine issue of fact.  Where the defendant's
justification evidence completely overcomes any
inference to be drawn from the evidence submitted by
the plaintiff, the district court may properly
acknowledge that fact and award summary judgment to the
employer.  Grigsby's conclusory allegations of
discrimination, without more, are not sufficient to
raise an inference of pretext or intentional
discrimination where Reynolds has offered such
extensive evidence of legitimate, nondiscriminatory
reasons for its actions.  See Meiri v. Dacon, 759 F.2d
at 998 (conclusory allegations of discrimination
insufficient to raise inference of pretext and thereby
defeat summary judgment motion).  Under these
circumstances, Reynolds was entitled to summary
judgment.

Id. at 597.

     In Branson v. Price River Coal Co., 853 F.2d 768, 771-

72 (10th Cir. 1988), the court stated:

However, we also hold the district court was justified
in entering summary judgment on the grounds that
plaintiffs failed to present any credible evidence on

16

the issue of pretext.  To avoid summary judgment, a party must produce "<u>specific</u> facts showing that there remains a genuine issue for trial" and evidence "'significantly probative' as to any [material] fact claimed to be disputed." <u>Steckl v. Motorola, Inc.</u>, 703 F.2d 392, 393 (9th Cir. 1983) (quoting <u>Ruffing v. County of Los Angeles</u>, 607 F.2d 1276, 1280 (9th Cir. 1979), <u>cert. denied</u>, 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980)).  Thus, plaintiffs' mere conjecture that their employer's explanation is a pretext for intentional discrimination is an insufficient basis for denial of summary judgment.

Mrs. Branson presented no evidence showing that the decision to eliminate her job was motivated by age discrimination and admits she would have required at least minimal training to assume any of the positions retained by younger employees.  Her assertion that Price River should nonetheless have retained her is insufficient to create a genuine issue of fact regarding Price River's articulated reasons for her discharge and avoid summary judgment.  The ADEA does not require employers to accord members of the protected class preferential treatment, but only that they treat age neutrally.  <u>See</u> <u>Williams</u>, 656 F.2d at 129-30.

Mrs. Saccomanno also failed to create a genuine issue of fact regarding Price River's articulated reasons for her discharge.  She admits Mr. Anderson "felt" she was less qualified than Mr. Hanson for the accounting department's remaining position and claims only that she was <u>in fact</u> equally or more qualified that Mr. Hanson.  As courts are not free to second-guess an employer's business judgment, this assertion is insufficient to support a finding of pretext.  <u>See</u> <u>Kephart v. Institute of Gas Technology</u>, 630 F.2d 1217, 1223 (7th Cir. 1980), <u>cert. denied</u>, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed 2d 383 (1981).  It is the perception of the decision maker which is relevant, not plaintiff's perception of herself.  <u>Smith v. Flax</u>, 618 F.2d 1062, 1067 (4th Cir. 1980).  Consequently, the district court's order of summary judgment was appropriate.

In <u>Hudson v. Southern Ductile Casting Corp.</u>, 849 F.2d 1372, 1376 (11th Cir. 1988), the court stated:

Although summary judgment should be granted with
caution in employment discrimination cases, there are
occasions when such disposition is appropriate.  See,
e.g., Beard v. Annis, 730 F.2d 741 (11th Cir. 1984).
This is one of those cases.  Where, as here, full
discovery has been conducted, the Supreme Court stated
recently that "there is no issue for trial unless there
is sufficient evidence favoring the nonmoving party for
a jury to return a verdict for that party.  If the
evidence is merely colorable or is not significantly
probative, summary judgment may be granted."  Anderson
v. Liberty Lobby, Inc., 477 U.S. 242, 249-50, 106 S.Ct.
2505, 2511, 91 L.Ed. 2d 202, 212 (1986)(citations
omitted).  See also Celetex Corp. v. Catrett, 477 U.S.
317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  We agree
with the district court that the evidence in this case
was such as to warrant summary judgment.

In Pace v. Southern Ry. System, 701 F.2d 1383, 1391 (11th Cir.

1983), the court stated:

Where the ADEA plaintiff has shown "no evidence 'which
might infer that age was even a factor in the
decision'" of which plaintiff complains summary
judgment is warranted.  Simmons v. McGuffey Nursing
Home, Inc., 619 F.2d at 370.  A plaintiff, when faced
with a motion for summary judgment, cannot rely on
attenuated possibilities that a jury would infer a
discriminatory motive, but rather must come forward
with sufficient evidence to establish a prima facie
case and respond sufficiently to any rebuttal by the
defendant to create a genuine issue of material fact.
Even where a prima facie case has been established but
the defendant has rebutted with a proffer of
legitimate, nondiscriminatory reasons for the
discharge, a genuine issue of material fact is not
automatically presented.  As the Supreme Court noted in
Texas Dept. of Community Affairs v. Burdine, 450 U.S.
at 254 n. 7, 101 S.Ct. at 1094 n. 7, once established a
prima facie case creates a rebuttable presumption of
discrimination; but this presumption alone does not
create an inference that a material fact, sufficient to
present a jury question, is an issue.  See also Reeves
v. General Food Corp., 682 F.2d 515, 521-22 & n. 9 (5th
Cir. 1982).  Cf. Moore v. Sears, Roebuck & Co., 464 F.
Supp. at 366 ("Only in an extraordinary instance could
rebuttal evidence be so conclusive as to permit summary
adjudication).  In Simmons, supra, defendants rebutted
plaintiff's prima facie case by showing a legitimate,
nondiscriminatory reason for the discharge and

> plaintiff failed to prove that age, rather than the
> nondiscriminatory reason, was the motivation for the
> decision.   619 F.2d at 371.   This court held that
> summary judgment was appropriate because "[t]he
> possibility of a jury drawing a contrary inference
> sufficient to create a dispute as to a material fact
> does not reify to the point even of a thin vapor
> capable of being seen or realized by a reasonable
> jury."   Id.

There is no evidence that any decision was made in bad faith.

See Clark v. Huntsville Bd. of Educ., supra at 527.   See also Nix

v. WLYC Radio Rahall Communications, 738 F.2d 1181, 1185 and 1187

(11th Cir. 1984), where the court said:

> The court thus may not circumvent the intent
> requirement of Plaintiff's ultimate burden of
> persuasion by couching its conclusion in terms of
> pretext; a simple finding that the Defendant did not
> truly rely on its proffered reason, without a further
> finding, that the Defendant relied instead on race will
> not suffice to establish Title VII liability.
>
> * * *
>
> Nor does the statute require the employer to have good
> cause for its decisions.   The employer may fire an
> employee for a good reason, a bad reason, a reason
> based on erroneous facts, or for no reason at all, as
> long as its action is not for a discriminatory
> reason . . .   "While an employer's judgment or course
> of action may seem poor or erroneous to outsiders, the
> relevant question is simply whether the given reason
> was a pretext for illegal discrimination.   The
> employer's stated legitimate reason . . . does not have
> to be a reason that the judge or jurors would act on or
> approve.

At best, plaintiff's evidence is "merely colorable."   See Young

v. General Foods Corp., 840 F.2d 825, 828 (11th Cir. 1988).

Plaintiff has introduced no substantial evidence "that a

discriminatory reason more likely motivated the employer or that

the employer's explanation is unworthy of credence."   Mantor v.

Hardy Corp., 825 F.2d 1554, 1558 (11th Cir. 1987).

See also Early, supra,

> Upon review of a grant of summary judgment, we apply
> the same legal standard that bound the district court.
> Rollins v. TechSouth, Inc., 833 F.2d 1525, 1528 (11th
> Cir. 1987). Summary judgment is appropriate where
> there is no genuine issue of material fact.
> Fed.R.Civ.P. 56(c). The trial court "must consider all
> the evidence in the light most favorable to the non-
> moving party," Rollins, 833 F.2d at 1528, and "resolve
> all reasonable doubts in favor of the non-moving
> party." Barnes v. Southwest Forest Indus., Inc., 814
> F.2d 607, 609 (11th Cir. 1987). A trial court,
> however, is not required "to resolve all doubts in such
> a manner." Barnes, 814 F.2d at 609.

> "Summary judgment procedure is properly regarded not as
> a disfavored procedural shortcut, but rather as an
> integral part of the Federal Rules as a whole, which
> are designed "to secure the just, speedy and
> inexpensive determination of every action.'" Celotex
> Corp. v. Catrett, 477 U.S. 317, 327, 106 S.Ct. 2548,
> 2555, 91 L.Ed.2d 265 (1986)(quoting Fed.R.Civ.P.1).
> "[The summary judgment] standard mirrors the standard
> for a directed verdict under the Federal Rule of Civil
> Procedure 50(a), which is that the trial judge must
> direct a verdict if, under the governing law, there can
> be but one reasonable conclusion as to the verdict."
> Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106
> S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). "The mere
> existence of a scintilla of evidence in support of the
> plaintiff's position will be insufficient; there must
> be evidence on which the jury could reasonably find for
> the plaintiff." Anderson, 477 U.S. at 252, 106 S.Ct.
> at 2512.

> Consideration of a summary judgment motion does not
> lessen the burdens on the non-moving party: the non-
> moving party still bears the burden of coming forward
> with sufficient evidence on each element that must be
> proved. Rollins, 833 F.2d at 1528. "[I]n ruling on a
> motion for summary judgment, the judge must view the
> evidence presented through the prism of the [movant's]
> substantive evidentiary burden." Anderson, 477 U.S. at
> 254, 106 S.Ct. at 2513. The trial judge must bear in
> mind the "actual quantum and quality of proof necessary
> to support liability" in a given case. Id. "[I]f on
> any part of the prima facie case there would be
> insufficient evidence to require submission of the case
> to a jury, we must affirm the grant of summary judgment
> [for the defendant]." Barnes, 814 F.2d at 609.

"[T]he plain language of Rule 56(c) mandates the entry
of summary judgment . . . against a party who fails to
make a showing sufficient to establish the existence of
an element essential to that party's case, and on which
that party will bear the burden of proof at trial.  In
such circumstances, there can be 'no genuine issue of
material fact,' since a complete failure of proof
concerning an essential element of the nonmoving
party's case necessarily renders all other facts
immaterial.  The moving party is 'entitled to a
judgment as a matter of law' because the non-moving
party has failed to make a sufficient showing on an
essential element of her case with respect to which she
has the burden of proof."  Celotex, 477 U.S. at 322-23,
106 S.Ct. at 2552.

Where as here discovery has been conducted, "there is
no issue for trial unless there is sufficient evidence
favoring the non-moving party for a jury to return a
verdict for that party.  If the evidence is merely
colorable, or is not significantly probative, summary
judgment may be granted."  Anderson, 477 U.S. at 249-
50, 106 S.Ct. at 2511 (citations omitted) (emphasis
added); accord Hudson v. Southern Ductile Casting
Corp., 849 F.2d 1372, 1376 (11th Cir. 1988).  Summary
judgments for defendants are not rare in employment
discrimination cases.  See, e.g., Mauter v. Hardy
Corp., 825 F.2d 1554 (11th Cir. 1987); Grigsby v.
Reynolds Metal Co., 821 F.2d 590 (11th Cir. 1987);
Palmer v. District Bd. of Trustees of St. Petersburg
Junior College, 748 F.2d 595 (11th Cir. 1984); Pace v.
Southern Ry. Sys., 701 F.2d 1383 (11th Cir. 1983);
Simmons v. McGuffey Nursing Home, Inc., 619 F.2d 369,
371 (5th Cir. 1980).

(Emphasis in original). 907 F.2d 1080-81.

In Early, supra, the court also stated:

The defendant may be entitled to summary judgment if he
produces evidence of legitimate nondiscriminatory
reasons for the employment action.  To survive summary
judgment, the plaintiff must then present concrete
evidence in the form of specific facts which show that
the defendant's proffered reason is mere pretext.  Mere
conclusory allegations and assertions will not suffice.
Mauter, 825 F.2d at 1558; Grigsby, 821 F.2d at 596-97;
Palmer, 748 F.2d at 599; Steckl v. Motorola, Inc., 703
F.2d 392, 393 (9th Cir. 1983); Pace, 701 F.2d at 1391;
Simmons, 619 F.2d at 371.  Most important, the
plaintiff always bears the ultimate burden of proving
discriminatory treatment by a preponderance of the
evidence.  Burdine, 450 U.S. at 253, 101 S.Ct. at 1093.

907 F.2d at 1081.  See also Clark v. Coates & Clark, Inc., 990

F.2d 1217, 1226-1228.

Plaintiff argues that the fact that she did not receive the position of Dean in either 1984 or 1990 is evidence of discrimination. To the contrary, it may well suggest an even wider group of search committee members who were not impressed with plaintiff's qualifications. While what evidence there is indicates some slight overlap of members of the three search committees, there is no evidence of an overlap sufficient to affect the outcome of all three. Further, there is no evidence that any search committee acted in bad faith.

Plaintiff obviously cannot attribute any 1984 or 1990 decisions to Vice President Watts. He was not involved. She cannot attribute the 1984 decision to President McGee. He was not there. Both in 1990 and 1996, McGee simply selected persons proposed by the search committees. The mere fact that he could perhaps have chosen plaintiff is not evidence that his failure to do so was discriminatory. There is absolutely no evidence of discrimination in the reasonably administered selection process. The subjective feelings of plaintiff and her "expert" do not change this fact. There is evidence that approximately 95% of the faculty members, male and female, nominated Fielding for Acting Dean. There is evidence that three search committees have not considered plaintiff to be acceptable when compared to others. There is evidence that the 1995-96 search committee somewhat hesitantly placed her in the final ten. There is evidence that one of her early supporters backed off after investigation.

This is purely and simply a case where the defendants followed a reasonable, non-discriminatory process to select the best qualified candidate for the position. Again, there is no

22

substantial evidence of bad faith or discriminatory animus.

Plaintiff's predetermined subjective belief of her entitlement to

the job is not sufficient.   It would not only be unreasonable but

remarkable for a finder of fact to conclude that an applicant who

received one out of twenty-odd faculty votes and ranked tenth in

a reasonable screening process was discriminated against because

of her sex.

There is further no reasonable inference of retaliation in

not obtaining the permanent position for the same reasons

discussed above.   From plaintiff's perspective, when she objected

to not being named Acting Dean, after being overwhelmingly

rejected by the faculty, she could automatically maintain a

retaliation claim when she was not permanently named to the

position after still another reasonable process.   This argument

is ludicrous.   Plaintiff apparently also attempts to claim that

any changes made by Fielding after he became Dean was

automatically the result of retaliation by him.   Even assuming

that Fielding is an appropriate person to be concerned with such

alleged retaliation (he was not a decision maker, he just got the

job), there is no reasonable inference that plaintiff's

complaints to Watts and/or McGhee affected the decisions of

Fielding.   It is pure speculation to suggest to the contrary.

Parties are not immunized from changes because of objecting to

not receiving promotions.   There must be some reasonable

inference of a causal relationship.   There is none here.[12]

_____

[12]The court does not find that there was any significant
diminishment in duties assigned.   It only assumes that there may
have been some slight changes.   Whatever changes that were made

## Summary

Of the persons who wrote letters in April 1995, fourteen males and seven females favored Fielding. One male, who plaintiff listed as a reference, favored plaintiff. One male arguably co-endorsed plaintiff and Fielding. Even that person said that Fielding "is the more people oriented candidate". This seems to be a problem area for plaintiff. This April 1995 process was followed by an eleven member search committee which placed plaintiff in tenth place and Fielding in the top two or three. At least two of the three females on the search committee did not support plaintiff. There is no evidence that any of the letter writers or the search committee acted in bad faith or considered plaintiff's sex. It is unimaginable that a reasonable finder of fact could conclude to the contrary based solely on plaintiff's subjective belief endorsed by a purported "expert" and stretched arguments. The Federal Rules of Evidence do not require a district court to admit <u>ipse dixit</u> opinions of "experts." See <u>General Electric Company v. Joiner</u>, ___ Supreme Court Report ___, 66 Law Week 4036 (1997). Further, only through pure speculation or imagination could a finder of fact find that plaintiff was retaliated against. There is not a "thin vapor" or "faint aroma" to suggest such. The court will not further repeat the well established principles applicable to summary judgment motions. Suffice it to say that there is no genuine issue of fact or law.

---

were run-of-the mill.

This ____ day of January, 1998.


**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**